Nelson, Administratrix, Respondent, vs. Milwaukee Electric Railway & Light Company, imp., Appellant.

*December 3, 1928—January 8, 1929.*

For the appellant there was a brief by *Shaw, Muskat & Sullivan,* attorneys, and *John S. Barry,* of counsel, all of Milwaukee, and oral argument by *Mr. Barry.*

For the respondent there was a brief by *Rubin, Zabel & Rouiller* of Milwaukee, and oral argument by *W. C. Zabel.*

CROWNHART, J.    It appears from the evidence that the decedent left her home on the morning of May 28, 1926, wearing a black dress, a sport coat with large blue and white checks, and a blue silk hat with black trimming.   The acci-

dent occurred at 5:30 p. m. The street car was a one-man car operated by a motorman. A witness testified that the decedent was at his place of business about 5 o'clock p. m. on the day in question. He testified to her dress as above described; that he walked with her from his place of business to the street-car line, where decedent entered a street car of the defendant, west-bound on the street toward the point where decedent was injured. Another witness testified that he was a passenger on the street car in question, and that immediately after the collision he saw a woman, dressed as was the decedent, lying on the floor of the street car; that as he was about to go to her assistance, other passengers helped her to her seat; that the motorman at that time was taking names in the front of the car, and that he took, among others, the name of the witness; that the woman he saw on the floor of the car was the only one on the car dressed in a sport coat with blue and white checks. A claim agent of the company testified that on the day after the accident he was directed by his superior to call on the decedent, which he did, and that she claimed that she had been hurt on the street car. He called for the purpose of adjusting the claim, if possible. He called upon her several times for the same purpose. One of the physicians for the street car company saw the decedent at his office May 31st and several times thereafter, and treated her about ten days. She had contusions on the back of her chest and in the region of the shoulder blade, as though she had been thrown against something; also contusions on the right knee and left ankle. All the parts were tender and painful. A daughter of the decedent testified that she came home the evening of the accident between 6 and 7 o'clock, and that her mother then complained of injuries and pain in both of her limbs, chest, and back.

Although the motorman took the names of passengers on the street car as witnesses, only one passenger was produced

by the company to testify. This was an old lady who sat in the front end of the car, who was much agitated by reason of the collision and who was in no position to see the decedent when she was injured. The motorman did not deny that the decedent was a passenger on his car. He admitted there were sixty-five passengers on the car, but he could remember only the one witness, the old lady called by the company to testify. In its answer the defendant did not directly deny that the decedent was a passenger on its car, or directly deny the injury.

We think the evidence abundantly justifies the finding of the jury that the decedent was a passenger on the car and was injured therein by reason of the collision. It was a circumstance for the jury to consider that the motorman should take the names of passengers in the car, of whom there were a large number, and that the company should fail to produce a single witness who was so situated as to see the decedent where she was seated. Also, the jury could consider the circumstance that the claim agent should visit the decedent shortly after the accident, and seek to settle her claim against the company and continue his solicitations from time to time thereafter. The jury could consider the fact that the company physician should have treated the decedent for ten days without explanation of why he did so. Unquestionably the jury might reasonably infer that the decedent was injured in the street-car accident, to the knowledge of the company.

Prior to the accident decedent was apparently a healthy woman. For a long time she had worked continuously at a florist's, earning $5 per day. She left home the morning of the accident in good physical condition. In the evening her daughter found her in bed, ill, nervous, greatly exhausted, and in pain. She vomited, could not eat, and had pain in her chest, back, and limbs, which continued until her death some two months later. She could not eat and frequently

vomited. She got no relief from the company's physician, and visited Dr. Reuth, complaining to him that she had nausea, vomiting, and pain in the upper abdomen, and in her back, hip, knee, and ankle. The doctor treated her back, knee, and ankle, and gave her medicine to try to stop the nausea and vomiting, treating her for several weeks, which gave her no relief. He then had an X-ray taken and diagnosed her condition as hernia of the stomach, that is, a passing of the stomach upward partly through the diaphragm. Dr. Oberembt, a competent surgeon, operated upon her to relieve this condition, and at the same time discovered that she had gall-bladder infection and operated for that. The gall-bladder trouble was not a result of the injury. From the operation there was immediate relief from the nausea and vomiting. Nine days after the operation the patient died of a pulmonary embolism. The embolism came as a result of the operation.

After the death of the patient an autopsy was had on the body, and it was found that the decedent had old adhesions of the pelvic organs and of the stomach, which adhesions might have contributed to the nausea of the patient. Assuming that such adhesions were contributing factors to the patient's suffering and disability, the jury may well have found that they were incited to activity by reason of the accident. The patient had been entirely healthy for a long time prior to the accident, but developed the nausea and suffering immediately following the accident, which continued until the operation. However, the expert medical testimony in behalf of the parties was so at variance that it was within the province of the jury to find the facts. Clearly, the evidence was sufficient to take the case to the jury as to the illness of decedent being proximately caused by the accident.

The defendant claims the damages are excessive. The damages are assessed for the pain and suffering at $2,500. The pain and suffering were extreme for a period of two

months, and a major surgical operation was performed upon her. We think the verdict of the jury cannot be said to be so excessive as to indicate prejudice or passion. The lower court passed upon the amount of the verdict and sustained it.

There was a suggestion on the argument that the allowance in the verdict for funeral expense was improper. This objection was not made to the trial court, nor is it found in the brief of counsel. By reference to the bill of exceptions we find that Dr. Miloslavich, called by the appellant as a witness, testified that death resulted from the operation. The operation, it was conceded, was performed by a competent surgeon to relieve the patient from the condition attributable to the accident. Hence, the funeral expense was properly included in the verdict.

*By the Court.*—The judgment of the circuit court is affirmed.